UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

RAY LEGAL CONSULTING GROUP,

                               Plaintiff,

                v.

STACEY M. GRAY and STACEY M. GRAY, P.C.,

                        Defendants.

------------------------------------------------------------X

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED:  August 8, 2014 | |

13 Civ. 6866 (KPF)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge:

      On December 21, 2011, Defendants Stacey M. Gray and Stacey M. Gray, P.C. were terminated as counsel for Victor F. Caldwell.  Since that termination, Defendants have attempted, in fits and starts, to obtain attorneys' fees for that representation, one consequence of which has been to prevent Plaintiff from obtaining attorneys' fees for its subsequent representation of Caldwell.  This fee dispute has engendered the instant action.  Plaintiff Ray Legal Consulting Group seeks a declaratory judgment that Defendants have neither a statutory charging lien under New York Judiciary Law Sections 475 and 475-a, nor any other legally enforceable basis for a fee dispute and/or apportionment of fees with Plaintiff.  Defendants have moved to dismiss this action.  Because this action is barred by principles of res judicata — specifically, an earlier decision of the New York State Supreme Court requiring Defendants and Caldwell to

arbitrate any dispute concerning attorneys' fees — Defendants' motion is granted, and this action is dismissed.[1]

## BACKGROUND[2]

### A.   Factual Background

#### 1.   Overview

Plaintiff Ray Legal Consulting Group ("Ray Legal") is a professional services firm with its principal place of business in Massachusetts.  (Compl. ¶ 6).  Attorney John H. Ray, III ("Ray") is its principal.  (*Id.* at ¶ 7).  Defendant Stacey M. Gray, P.C. ("Gray P.C.") is a New York professional corporation engaged in the practice of law in the State of New York, with its principal place of business in New York.  (*Id.* at ¶ 9).  Defendant Stacey M. Gray ("Gray") is an attorney with Gray P.C.  (*See id.* at ¶ 10).

It is no overstatement to note that the parties have had a tortured relationship regarding efforts to apportion attorneys' fees obtained from Victor F. Caldwell ("Caldwell"), a current client of Ray Legal and a former client of Gray P.C.  In fact, this action is just one of several state and federal actions seeking resolution of the fee dispute issue.  In it, Plaintiff seeks a declaratory

---

[1]    The Court is issuing today an Opinion and Order in a related litigation, *Ray Legal Consulting Group* v. *Arnold E. DiJoseph, et al.*, No. 13 Civ. 6867 (KPF) (the "DiJoseph Action"), involving the two counsel, as well as other individuals and entities that are alleged to have been involved in the underlying fee dispute.

[2]    The facts contained in this Opinion are drawn from the Complaint ("Compl.") (Dkt. #1); the Declaration of Stacey M. Gray ("Gray Decl."), and the exhibits attached thereto; the Declaration of John H. Ray, III ("Ray Decl."), and the exhibits attached thereto; and the Reply Declaration of Stacey M. Gray ("Gray Reply Decl."), and the exhibits attached thereto.

For convenience, Defendants' supporting memorandum is referred to as "Def. Br."; Plaintiff's brief in opposition as "Pl. Opp."; Defendants' Reply as "Def. Reply"; and Plaintiff's Sur-Reply as "Pl. Sur-Reply."

judgment holding that Defendants do not have a statutory charging lien under New York Judiciary Law Sections 475 and 475-a, whether considered before or after recent amendments to that law, or any other legally enforceable basis for either a fee dispute or any apportionment of legal fees with Plaintiff.  (Compl. ¶ 1).[3]

According to Plaintiff, on November 11, 2011, Caldwell retained Defendants to represent him in a settlement negotiation with his employer. (Compl. ¶ 10).  To that end, Caldwell and Defendants entered into an

---

[3]    Section 475 "governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russian News Agency* v. *Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998).  Prior to January 1, 2013, the law provided:

> From the commencement of an action, special proceeding or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come.

N.Y. Jud. Law § 475.  Under this version of the statute, in order for an attorney to be entitled to a charging lien, an action or proceeding must have been commenced.  *See Itar-Tass Russian News Agency*, 140 F.3d at 450 ("[T]he New York cases make clear that the charging lien provided by Section 475 is for the benefit of an attorney of record only." (internal quotation marks omitted)); *In re Air Crash at Belle Harbor, New York, on November 12, 2001*, No. 02 MDL 1448 (RWS), 2006 WL 3247675, at *2 (S.D.N.Y. Nov. 9, 2006) ("In order to be entitled to a lien under New York Judiciary Law section 475, the attorney must appear for the client by 'participating in a legal proceeding on the client's behalf or by having his name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter.'" (quoting *Ebert* v. *New York City Health & Hosps. Corp.*, 619 N.Y.S.2d 756 (2d Dep't 1994))

On January 1, 2013, an amendment to Section 475 went into effect, extending the law to "any means of alternative dispute resolution including, but not limited to mediation or arbitration or the provision of services in a settlement negotiation at any state of the dispute." N.Y. Jud. Law § 475.  This amendment "made clear that attorneys may seek charging liens not only with respect to an official court action or proceeding but also for out-of-court settlements."  *Bonnaig* v. *Walton*, 968 N.Y.2d 368, 370 (N.Y. Sup. Ct. 2013). The only court to address the issue concluded that the amendment applies only prospectively.  *Id.* at 371.  However, that court's underlying holding was reversed by the Appellate Division, which expressly declined to reach the issue of retroactivity.  *Bonnaig* v. *Walton*, 982 N.Y.S.2d 319, 320 (1st Dep't 2014) ("[W]e need not reach the issue of whether the 2012 amendment to § 475 applied retroactively.").

Engagement Agreement.  (*Id.*; Ray Decl., Ex. 1).  Plaintiff alleges that in the Engagement Agreement, Gray P.C. expressly disclaimed performance of any services that could support a charging lien under Section 475.  That is, Gray P.C. agreed that it had not been retained for "the filing of a lawsuit or any documents in a court, city or state department," and it refused to "agree to represent [Caldwell] in any type of formal litigation including the filing of a complaint or taking of any other legal action in court."  (*Id.* at ¶ 15).  According to Plaintiff, Gray P.C. in fact did not perform such services.  (*Id.* at ¶¶ 14, 16).

Caldwell's and Defendants' business relationship was short-lived, and on December 21, 2011, Defendants were terminated by Caldwell.  (Compl. ¶ 11).  Defendants did not perform any work for Caldwell after that date.  (*Id.* at ¶ 24).  Plaintiff subsequently represented Caldwell in the negotiation for which Defendants were initially retained, as well as a related legal action.  (*Id.* at ¶ 12).  Defendants never entered into any agreement with Plaintiff, whether concerning legal fees or for any other reason.  (*Id.* at ¶ 17).

### 2.    The Attorneys' Fees Dispute

Evidence submitted by both sides in connection with Defendants' motion to dismiss makes clear that the present dispute principally arises out of a confidentiality agreement entered into on February 10, 2012 (the "Confidentiality Agreement"), between Plaintiff and Defendants' then-attorney, Arnold DiJoseph, concerning the attorneys' fees that were sought by both Plaintiff and Defendants for legal services rendered to Caldwell.  (Ray Decl. ¶ 2).  These legal services had yielded an April 17, 2013 settlement agreement

between Caldwell and his former employer (the "Settlement Agreement"), to which Plaintiff (but not Defendants) was a party (*See* Gray Decl., Ex. 3).

Under the Confidentiality Agreement, an escrow account was created in which to deposit the attorneys' fees that were withheld from Caldwell's settlement with his former employer. (Ray Decl. ¶ 3). The Agreement provided "[t]hat counsels Ray and Gray have a dispute regarding legal fees for legal services purportedly rendered to Mr. Caldwell," and further provided that "[t]he apportionment of the fees between Ray and Gray will be determined either by binding arbitration or by a court of competent jurisdiction." (*Id.* at ¶ 4). Similarly, the Settlement Agreement provided that "[t]he apportionment of fees held in [an] Escrow Account between [Plaintiff] and [Gray P.C.] [would] be determined either though binding arbitration or a court of competent jurisdiction." (Gray Decl., Ex. 3). The funds remain in escrow.

## B. Procedural Background

### 1. The Caldwell-Gray State Court Action

On February 15, 2012, Caldwell commenced an action against Gray and Gray P.C. in the Supreme Court of the State of New York, County of New York (the "State Court Action"). (Gray Decl., Ex. 4). Plaintiff Ray Legal represented Caldwell in that action. (*Id.*). In that action, Caldwell alleged nearly identical facts to those alleged here with respect to his retention of Gray to represent him in settlement negotiations. (*See id.*). He claimed that he entered into the Engagement Agreement with Gray P.C., and that Gray did not engage in any conduct that could support a charging lien under Section 475. (*Id.* at ¶¶ 12-

14).  Caldwell further alleged that he terminated Gray P.C. on December 21, 2011 (*id.* at ¶ 19), and that Gray P.C. was due $11,500 in attorneys' fees for 28 hours of work (*id.* at ¶ 24).  Caldwell also alleged that Gray P.C. did not serve, and he did not sign, a notice of lien pursuant to Section 475-a.  (*Id.* at ¶ 33).

Also similar to the instant matter, Caldwell sought in the State Court Action a declaratory judgment that Gray P.C. was "not entitled to any statutory, contractual or other lien against any settlement proceeds and that any settlement funds may be lawfully released, without any liability to Gray P.C., as directed by [Caldwell] to [Plaintiff]."  (Gray Decl., Ex. 4 at ¶ 4).  Finally, Caldwell sought a protective order requiring the parties to maintain any evidence produced in the proceedings regarding the underlying settlement as confidential.

On August 24, 2012, Justice Doris Ling-Cohan dismissed the State Court Action.  (Gray Decl., Ex. 1).  In so doing, Justice Ling-Cohan relied on the provision in the Engagement Agreement that required Gray P.C. and Caldwell to arbitrate any fee dispute, such as the dispute on which the State Court Action was predicated.  (*Id.*).

Thereafter, Gray and Gray P.C. filed a motion to renew the court's August 24 decision; in response, Caldwell cross-moved for relief from the August 24 decision, and for a declaratory judgment that Gray and Gray P.C. had not established any enforceable statutory, contractual, or other lien against the escrowed funds.  (*See* Gray Decl., Ex. 2).  Justice Ling-Cohan denied Gray's and Gray P.C.'s motion, holding that there was no basis for renewal because

Gray and Gray P.C. had "failed to assert new facts not offered on the prior motion that would change the prior determination or ... demonstrate that there ha[d] been a change in the law that would change the prior determination." (*Id.*).  For the same reasons, Justice Ling-Cohan denied Caldwell's cross-motion; she also found that that Caldwell had not demonstrated that the court misapprehended the relevant law or facts.  (*Id.*).  Accordingly, the court reiterated its prior holding that ordered the parties to proceed to arbitration. (*Id.*).

Caldwell filed a second motion to reargue or renew his cross-motion. (*See* Gray Reply Decl., Ex. 1).  In January 2014, Justice Ling-Cohan issued a final disposition in which she again denied Caldwell's motion, citing his failure to allege, much less prove, that the court had misapprehended the law or facts, as would be necessary to warrant the relief sought.  (*Id.*).  She also noted that the proceeding involved two attorneys [i.e., Ray and Gray] and, in that vein, "encourage[d] the parties to resolve the [] dispute amicably, or *via* private mediation."  (*Id.* (emphasis in original)).

### 2.    The Gray-Ray Action and Its Removal to This Court

Prior to the commencement of this action, on July 29, 2013, Gray P.C. commenced an action in the New York State Supreme Court against Plaintiff, entitled *Stacey M. Gray, P.C.* v. *Ray Legal Consulting Group*, Index No. 156885/2013 (N.Y. Sup. Ct., N.Y. Co. 2013) (the "Gray-Ray Action").  (Compl. ¶ 19).  On September 9, 2013, Plaintiff removed the Gray-Ray Action to this Court, and it was assigned to the undersigned.  *Stacey M. Gray, P.C.* v. *Ray*

7

*Legal Consulting Group*, No. 13 Civ. 6336 (KPF).  (*Id.*).  In the Gray-Ray Action,

Gray P.C. alleged that its claims against Ray Legal for a charging lien and any

purported fee dispute with Gray P.C. were based on the amended version of

Section 475.  (*Id.* at ¶ 21).  Gray P.C. also indicated in that complaint that

Caldwell had terminated Gray P.C. as his attorney on or about December 21,

2011.  (*Id.* at ¶ 23).

Two days after the action's removal, on September 11, 2013, Ray Legal

filed a pre-motion request to dismiss the Gray-Ray Action.  (Ray Decl., Ex. 3).

The next day, Gray P.C. voluntarily dismissed the action pursuant to Federal

Rule of Civil Procedure 41(a)(1)(A)(i).  (*Id.* at ¶ 31).[4]  When Ray Legal inquired as

to why Gray P.C. dismissed the action, counsel for Gray P.C. stated that it was

their "prerogative to do" so after the action was removed to federal court.  (*Id.* at

¶ 32).

### 3.     The DiJoseph Federal Court Action

On the same day that Plaintiff filed the instant suit, it brought yet

another action relating to the fee dispute (the "DiJoseph Action"), this one

naming as defendants Gray and Gray P.C.; attorney Arnold E. DiJoseph, III

and his law firm; the law firm Arent Fox LLP; and the accounting firm Deloitte

Touche Tohmatsu Services, Inc., and Deloitte Touche Tohmatsu Limited, Inc.

(the latter two, collectively, "Deloitte").  This action was likewise assigned to the

undersigned.

---

[4]     Federal Rule of Civil Procedure 41 provides, in relevant part, that "the plaintiff may
dismiss an action without court order by filing [] a notice of dismissal before the
opposing party serves either an answer or a motion for summary judgment."  Fed. R.
Civ. P. 41(a).

In the DiJoseph Action, Plaintiff asserted claims for tortious interference, breach of the covenant of good faith and fair dealing, civil conspiracy, and breach of fiduciary duty. (Gray Decl., Ex. 6). These claims stem from the defendants' conduct related to the settlement that Caldwell entered into with his former employer — the very settlement underlying this action, the State Court Action, and the Gray-Ray Action. (*See id.*). The defendants in that case have moved to dismiss, and an Opinion resolving those motions is being issued separately today.

### 4.    The Instant Litigation

Plaintiff commenced this action on September 26, 2013, requesting a declaratory judgment that neither Gray nor Gray P.C. "has a 'charging lien' … or any other legally enforceable basis for a fee dispute and/or apportionment of fees with [Plaintiff]." (Compl. ¶ 1). In support, Plaintiff alleges that "[t]here is a substantial and continuing controversy between Plaintiff" and Defendants because Defendants "have asserted claims of a 'charging lien' to prevent the distribution of settlement funds[], and a declaration of rights is both necessary and appropriate to establish that [Defendants] do not have a statutory 'charging lien'" under Sections 475 and 475-a, or "any other legally enforceable basis for a fee dispute and/or apportionment of fees with Plaintiff." (*Id.* at ¶ 28).

On October 9, 2013, Plaintiff filed a letter requesting a pre-motion conference for its anticipated motion for judgment on the pleadings. (Dkt. #5). Defendants responded to Plaintiff's letter on October 15, 2013, raising a series

of issues in response, including indicating Defendants' intention to file a motion to dismiss Plaintiff's Complaint.  (Dkt. #7).  The parties then exchanged correspondence addressing issues raised in their initial letters, among others, before the Court held an initial pretrial conference on October 22, 2013.

At the October 22 conference, the Court ordered Defendants to answer or otherwise respond to the Complaint by November 21, 2013, and advised that once Defendants answered or responded, the Court would contact the parties to set an appropriate scheduling order.  (Dkt. #20).  Defendants filed their motion to dismiss on November 21, 2013.  (Dkt. #21).  The Court then issued an Order directing Plaintiff to respond by December 23, 2013, and requiring any reply to be filed by January 10, 2014.  (Dkt. #23).  In accordance with that Order, Plaintiff filed its opposition on December 23, 2013 (Dkt. #30), and the motion was fully submitted when Defendants filed their reply on January 13, 2014 (Dkt. #34), per a Court-approved extension.

On January 14, 2014, without Court approval, Plaintiff submitted a sur-reply.  (Dkt. #37).  The Court denied Defendants' request to respond to Plaintiff's sur-reply, advising that if the Court required further briefing it would request the same from the parties.  (Dkt. #39).

## DISCUSSION

**A.    Applicable Law**

**1.    Motions Under Federal Rule of Civil Procedure 12(b)(1)**

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed

by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson &
Cortese-Costa, P.C.* v. *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal
quotation marks omitted).  In that regard, "a district court may properly
dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it
lacks the statutory or constitutional power to adjudicate it." *Aurecchione* v.
*Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal
quotation marks omitted*); accord Solowski* v. *Metro. Transp. Auth.*, 723 F.3d
187, 190 (2d Cir. 2013).  A "plaintiff asserting subject matter jurisdiction has
the burden of proving by a preponderance of the evidence that it exists."
*Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).

    In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all
facts alleged in the complaint as true and draw all reasonable inferences in
favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that
showing [may] not [be] made by drawing from the pleadings inferences
favorable to the party asserting it." *Morrison* v. *Nat'l Bank Ltd.*, 547 F.3d 167,
170 (2d Cir. 2008) (internal citation and quotation marks omitted).  Moreover,
where subject matter jurisdiction is contested a district court is permitted to
consider evidence outside the pleadings, such as affidavits and exhibits.  *See
Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d
Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject
matter jurisdiction, the court may resolve the disputed jurisdictional fact
issues by referring to evidence outside of the pleadings, such as affidavits, and
if necessary, hold an evidentiary hearing."); *accord Tandon* v. *Captain's Cove*

*Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").

### 2.    Motions Under Federal Rule of Civil Procedure 12(b)(6)

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is "substantively identical" to the Rule 12(b)(1) standard.  *Lerner* v. *Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).  Under Rule 12(b)(6), the Court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Hennenman*, 517 F.3d 140, 149 (2d Cir. 2008); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "[A] plaintiff's *reliance* on the terms and effects of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original).

Under Federal Rule of Evidence 201, a district court may also "take judicial notice of documents filed in other courts ... not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); *see also Global Network Commc'n, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("'A court may take judicial notice of a document filed in another court not for the truth

of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

**B.    Analysis**

**1.    This Court Has Subject Matter Jurisdiction Over This Action**

**a.    Standing Law Generally**

Defendants first mount various challenges to the Court's subject matter jurisdiction to hear this case, beginning with a challenge to Plaintiff's standing. The Supreme Court confirmed last year that "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restrict the authority of federal courts to resolving the legal rights of litigants in actual controversies."  *Genesis Healthcare Corp.* v. *Symczyk,* 133 S. Ct. 1523, 1528 (2013); *see also Valley Forge Christian Coll.* v. *Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) ("The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process.").

"As an incident to the elaboration of this bedrock requirement," a plaintiff seeking to maintain an action in federal court is "always required" to have standing.  *Valley Forge Christian College*, 454 U.S. at 471; *see also Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("One of those landmarks, setting apart the 'Cases' and 'Controversies' that are the justiciable sort

referred to in Article III — serv[ing] to identify those disputes which are appropriately resolved through the judicial process — is the doctrine of standing." (internal citation and quotation marks omitted)). "To demonstrate standing, a plaintiff must have 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'" *Salazar* v. *Bruno*, 559 U.S. 700, 711 (2010) (quoting *Horne* v. *Flores*, 557 U.S. 433, 445 (2009) (emphasis in *Horne*)). To that end, the issue of standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Kiryas Joel Alliance* v. *Vill. of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (summary order).

As the Supreme Court established in *Lujan*, "the irreducible constitutional minimum of standing contains three elements":

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. at 560 (internal citations and quotation marks omitted). The "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191 (2000); *see also Genesis Healthcare Corp.*, 133 S. Ct. at 1528 ("This requirement ensures that the

Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.").  In accordance with this precept, a plaintiff must establish standing for each claim and form of relief sought. *Carver* v. *City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).

### b.   Plaintiff Has Standing to Assert Its Declaratory Judgment Claim

Defendants argue that Plaintiff Ray Legal lacks standing to pursue this action because it does not have an attorney-client relationship with Defendants.  (Def. Reply 3).[5]  This argument can be swiftly rejected.

New York law holds, albeit implicitly so, that an attorney has standing to pursue an action under Section 475 against another attorney for fees due to the attorney from his former client.  *See, e.g.*, *Matter of Cohen* v. *Grainger, Tesoriero & Bell et al.*, 81 N.Y.2d 655, 658 (1993) (recognizing the validity of a dispute between two attorneys where one attorney asserted a charging lien pursuant to Section 475); *Smerda* v. *City of New York*, 776 N.Y.S.2d 86, 87 (2d Dep't 2004) (holding that an attorney has a statutory charging lien pursuant to Section 475 against his former client's current attorney); *Biscardi* v. *Rest. Depot*, 980 N.Y.S.2d 274, 2013 WL 4411233, at *2 (N.Y. Co. Ct. 2013) ("Where

---

[5]      Although Defendants raise their argument that Plaintiff lacks standing in their reply memorandum, such that the Court need not consider it, *see Evangelista* v. *Ashcroft*, 359 F.3d 145, 156 n.4 (2d Cir. 2004) ("[W]e will not consider an argument raised for the first time in a reply brief." (internal quotation marks omitted)), the Court will do so here because it is a jurisdictional issue, which must be addressed when "it emerges from the record."  *Pashaian* v. *Eccelston Properties, Ltd.*, 88 F.3d 77, 82 (2d Cir. 1996) ("[B]ecause it is jurisdictional, we must examine the issue *sua sponte* when it emerges from the record."  (internal citation omitted)); *see also Kiryas Joel Alliance*, 495 F. App'x at 188 ("Standing is the threshold question in every federal case." (internal quotation marks omitted)).

a dispute over compensation arises between an attorney, who is discharged by the client without cause, and the incoming attorney, the outgoing attorney may elect to take compensation on the basis of a presently fixed dollar amount based upon *quantum meruit* or, in lieu thereof, the outgoing attorney has a right to elect a contingent percentage based on the proportionate share of the work performed on the whole case."); *see also* N.Y. Jud. Law § 475 (specifying that "[t]he Court upon the petition of the client *or attorney* may determine and enforce a lien." (emphasis added)).

Even if Plaintiff could not establish standing under Section 475 (which it can), there are alternative bases for standing.  Plaintiff's declaratory judgment action is not limited to a request for relief under Section 475, but also seeks a declaration that Defendants have no "other legally enforceable basis for a fee dispute and/or apportionment of fees with [Plaintiff]."  (Compl. ¶ 1).  Plaintiff has made a claim for fees due to it for legal services provided to Caldwell, thereby demonstrating its stake in the outcome of this controversy.  The injury in fact is the current deprivation of funds to which Plaintiff alleges it is entitled that is caused by Defendants' claim to those funds; Plaintiff's injury will be redressed by a determination of whether Defendants do in fact have a claim to the disputed funds.  The fact that Plaintiff does not have an attorney-client relationship with Defendants is irrelevant to the analysis and does not foreclose it from pursuing this action.

### c. This Action Involves a Case or Controversy Ripe for Adjudication Under the Declaratory Judgment Act

### i. There Is a Case or Controversy

Defendants next argue that there is no case or controversy between the parties.  (Def. Reply 4).  To support this argument, Defendants point to the Affirmation of John H. Ray III (the "Ray State Court Affirmation" or "Affirmation"), that was submitted by Plaintiff's principal in connection with the State Court Action.  In it, Ray attested to the amount that could be awarded to Gray for the services she rendered to Caldwell under three fee apportionment standards.  (Gray Reply Decl., Ex. 2).

Plaintiff counters by arguing that Ray's attestations in the Affirmation are irrelevant here, and similarly do not negate the existence of a case or controversy for two reasons.  (Pl. Sur-Reply 2).  First, Plaintiff eschews any claim for a declaration that Defendants are precluded from seeking attorneys' fees from Caldwell — which is, Plaintiff alleges, the subject matter of the State Court Action in which the Affirmation was submitted.  Second, and relatedly, Plaintiff explains that the attestations in the Affirmation concerned amounts that might hypothetically be due to Defendants from Caldwell, if Defendants were to prove their entitlement to fees.

Ray's prior attestations are irrelevant to this action.  They are nothing more than indications of his position as to what Gray P.C. could be entitled to if the state court determined that Gray P.C. was entitled to legal fees from Caldwell under any of three apportionment scenarios.  There is no concession that Gray P.C. was in fact entitled to any fees from Caldwell.  As such, Ray's

statements impart nothing on the issue of whether there exists a controversy between Plaintiff and Defendants over the escrowed funds.

### ii.    The Matter Is Ripe

"The federal judicial power extends only to actual cases and controversies; federal courts are without jurisdiction to decide abstract or hypothetical questions of law." *E.I. Dupont de Nemours & Co.* v. *Invista B.V.*, 473 F.3d 44, 46 (2d Cir. 2006). In accordance with this principle, the Declaratory Judgment Act provides,

> [i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. Courts retain "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton* v. *Seven Falls Co.*, 515 U.S. 277, 286 (1995). "But that discretion does not extend to the declaration of rights that do not exist under law.... The [Declaratory Judgment Act] is procedural only, and does not create an independent cause of action." *Chevron Corp.* v. *Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (internal quotation marks and citations omitted).

The words "case of actual controversy" incorporate the ripeness requirements of Article III. *See MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). A declaratory judgment action is ripe for adjudication if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

19

immediacy and reality to warrant the issuance of a declaratory judgment." *In re Prudential Lines Inc.*, 158 F.3d 65, 70 (2d Cir. 1998) (internal citation omitted).

That a case presents an active controversy, however, does not require a court to exercise its jurisdiction under the Declaratory Judgment Act.  Rather, as the Second Circuit has instructed, when assessing the appropriateness of declaratory relief, courts should consider "[i] whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and [ii] whether a judgment would finalize the controversy and offer relief from uncertainty." *Dow Jones & Co.* v. *Harrods, Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003); *accord Cont'l Cas. Co.* v. *Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).

Plaintiff seeks attorneys' fees that are being withheld from the parties until a court or arbitrator determines the apportionment of the fees.  This is evident from, among other evidence, the Confidentiality Agreement and Defendants' conduct in seeking to resolve this dispute by filing the Gray-Ray Action.[6]  Although Defendants voluntarily dismissed that action, there is no indication that Defendants no longer seek the monies to which Plaintiff has a stated interest.  To the contrary, Defendants attested in the State Court Action that "[t]here is an ongoing fee dispute between Mr. Ray and Ms. Gray." (Ray

---

[6]     The Court rejects Defendants' argument that it should disregard the Confidentiality Agreement.  It is well-established that a "district court may … refer to proffered evidence in deciding a [Rule] 12(b)(1) motion." *Robinson* v. *Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001).  The Court will do just that here.

Decl. ¶ 38, Ex. 4).  It is thus beyond credible dispute that a controversy exists between the parties.

Moreover, a judgment rendered in this action would settle the legal issue of whether Defendants are entitled to attorneys' fees, and consequently release the settlement funds from escrow, thereby finalizing the controversy.  *See Person* v. *Lemelson*, No. 90 Civ. 1242 (SWK), 1990 WL 144208, at *2 (S.D.N.Y. 1990) (holding that the action was ripe for declaratory judgment where the parties' dispute was the existence of a right to claim attorneys' fees).  Absent a ruling from this Court, resolution of the parties' dispute will remain in limbo unless the parties reach a resolution, or there is an intervention by an arbitrator, both of which appear highly unlikely on the present record.

Finally, Defendants provide no legal support for their contention that Caldwell and the parties in the DiJoseph Action are necessary parties for the Court to adjudicate the present dispute (Def. Reply 5-6), and the Court has found none.  Accordingly, this Court has subject matter jurisdiction to adjudicate the parties' dispute under the Declaratory Judgment Act.

### 2.      Principles of Res Judicata Bar This Action

Having determined that it has subject matter jurisdiction over Plaintiff's claim, the Court may properly assess Defendants' merits-based arguments. Defendants' primary argument is that this action should be dismissed based on res judicata grounds.  (Def. Br. 4).  As set forth herein, Defendants are correct.

### a.   Res Judicata Law Generally

The doctrine of res judicata, also known as claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Maharaj* v. *Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981)).  In other words, "the doctrine states that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose." *Id.* (internal quotation marks omitted).

The Second Circuit has instructed that "the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Maharaj*, 128 F.3d at 97.  Four requirements are necessary for res judicata to apply to a later litigation.  The earlier decision must have been "[i] a final judgment on the merits, [ii] by a court of competent jurisdiction, [iii] in a case involving the same parties or their privies, and [iv] involving the same cause of action." *Hecht* v. *United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012) (quoting *In re Adelphia Recovery Trust*, 634 F.3d 678, 694 (2d Cir. 2011)).

22

Plaintiff argues broadly that res judicata is not applicable here because it seeks to relitigate neither the issue of arbitrability between Caldwell and Defendants, nor the merits of the Caldwell-Defendants fee dispute. (Pl. Opp. 8). Plaintiff does not contest that a final judgment on the merits was issued by a court of competent jurisdiction (*id.*), but rather takes aim at the latter two requirements, contending that there is a lack of privity and of identity of issues, so as to fulfill the "same cause of action" prerequisite. (*Id.*). The Court will assess these arguments in turn.

### b.    Plaintiff Is in Privity with Caldwell

"It is well settled in this [C]ircuit that literal privity is not a requirement for *res judicata* to apply." *Monahan* v. *New York City Dept. of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Rather, "a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.'" *Id.* (citing *Alpert's Newspaper Delivery, Inc.* v. *The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989)). As particularly significant here, "[c]ourts have held that the attorney-client relationship itself establishes privity." *Weinberger* v. *Tucker*, 510 F.3d 486, 492-93 (4th Cir. 2007) (collecting cases).

Plaintiff does not dispute that it has an attorney-client relationship with Caldwell. In that regard, Plaintiff is in privity with Caldwell. More fundamentally, the complaint in the State Court Action makes clear that Plaintiff's interests were adequately represented in that action by Caldwell; Plaintiff was vested with the authority of representation. Caldwell sought a

declaratory judgment that Gray P.C. was "not entitled to any statutory, contractual or other lien against any settlement proceeds and that any settlement funds may be lawfully released, without any liability to Gray P.C., as directed by [Caldwell] *to his counsel*." (Gray Decl., Ex. 4 at ¶ 4 (emphasis added)). Thus, while Caldwell may nominally have served as plaintiff in the State Court Action, the relief sought was entirely for Plaintiff's benefit. What is more, in serving as Caldwell's counsel in the State Court Action, Plaintiff was able to ensure, in a unique manner, that its own interests were well-represented.

The Settlement and Confidentiality Agreements likewise confirm the identity of Caldwell's and Plaintiff's interests. Indeed, the agreements identify that Caldwell had a shared interest with Plaintiff (and even Defendants) with respect to resolving the dispute over the fees that Caldwell was to pay for counsel's representation. (*See, e.g.*, Ray Decl. ¶ 4 (stating "[t]hat counsels Ray and Gray have a dispute regarding legal fees for legal services purportedly rendered to Mr. Caldwell," and that "[t]he apportionment of the fees between Ray and Gray will be determined either by binding arbitration or by a court of competent jurisdiction")).

Plaintiff's reliance here on *Usina Costa Pinto S.A. Acucar E Alcool* v. *Louis Dreyfus Sugar Co., Inc.*, 933 F. Supp. 1170, 1176 (S.D.N.Y. 1996), is misplaced. In that case, the defendant argued that the plaintiff's complaint was barred by res judicata based on a decision from an arbitration between the plaintiff and one of the defendant's subsidiaries, Interdevco, that was not a party to the

litigation.  In finding insufficient identity of parties to warrant res judicata, the court held that there was no privity between the defendant and Interdevco because the defendant was not a signatory to the arbitration agreement and could not be compelled to arbitrate.  *Id.*  It was equally relevant to the court's privity analysis that although the defendant and Interdevco were subsidiaries of the same foreign parent corporation, that fact alone did not "create a master/servant or principal/agent relationship."  *Id.*  The court recognized that in the circumstances of that case, Interdevco could not have represented the defendant's interests in the arbitration, and the arbitral decision did not encompass certain claims that the plaintiff sought to be adjudicated by the court.

The present case is materially distinguishable.  Defendants here do not seek to enforce an arbitral decision as to which Plaintiff neither was a party nor where his interests were not represented.  Most importantly, unlike the corporate subsidiaries defendant and Interdevco, Plaintiff and Caldwell have an attorney-client relationship and, for the reasons discussed above, are in fact in privity.  Although it is correct that Plaintiff is not a signatory to the Engagement Agreement, that fact does not foreclose Plaintiff from having to arbitrate this dispute with Defendants.  *See, e.g.*, *Sarhank Grp.* v. *Oracle Corp.*, 404 F.3d 657, 662 (2d Cir. 2005) ("[T]his Court has recognized instances in which nonsignatories can be bound to the arbitration agreement of others, such cases are limited to instances of incorporation by reference, assumption, veil piercing/alter ego and estoppel and the like."); *In re Arbitration Between*

*Monegasque de Reassurances* v. *Nak Naftogaz of Ukraine*, 311 F.3d 488, 495 (2d Cir. 2002) ("We have recognized certain theories under which a non-signatory party may be bound by an arbitration agreement.... Those theories arise out of common law principles of contract and agency law.").[7]  For all of these reasons, privity is established for res judicata purposes.

### c.    The Same Cause of Action Is Involved

The inquiry of whether the earlier litigation involves the same cause of action as the instant matter "focuses on whether the ... claims arise from the same 'nucleus of operative fact' — that is, 'whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Fried* v. *LVI Services, Inc.*, 557 F. App'x 61, 64 (2d Cir. 2014) (summary order) (quoting *Waldman* v. *Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)).  Plaintiff's efforts to distinguish the instant matter from the State Court Action (*see* Pl. Opp. 10), are belied by the evidence of record.  A review of the two complaints reveals that the claims in both actions arise from the same nucleus of operative facts.  Specifically, both actions arise from Defendants' representation of Caldwell, and their consequent claim for attorneys' fees for the services rendered to Caldwell.  Indeed, both complaints are predicated on the former client-attorney relationship between Caldwell and

---

[7]    Whether Plaintiff is bound to arbitrate under the Engagement Agreement is not an issue before this Court, and it need not be determined in light of the Court's holding that privity is clearly established in this case.

Defendants, and to that end, reiterate the commencement and demise of that relationship.

Plaintiff's additional argument that res judiciata is inapplicable because the "requested relief is dramatically different" in the two actions also rings hollow.  (Pl. Opp. 11).  As an initial matter, Plaintiff's argument is factually incorrect: In each action, the plaintiff seeks a declaratory judgment that Defendants have no charging lien for attorneys' fees for services rendered to Caldwell.  In any event, that "claims may rely upon a different legal theory or seek an alternative form of relief does not affect the [res judicata] analysis." *Fried*, 557 F. App'x at 64; *Berrios* v. *New York City Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009) ("Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence."); *accord Epperson* v. *Entm't Express, Inc.*, 242 F.3d 100, 108-09 (2d Cir. 2001) (observing that res judicata "'operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action'" (quoting *Saylor* v. *Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968) (internal citations omitted))).

By bringing the State Court Action, Plaintiff (through Caldwell) sought to achieve precisely what it seeks here — a judgment declaring that Defendants are not entitled to any attorneys' fees and, by extension, a finding that the fees held in escrow may be released to Plaintiff alone.  Plaintiff cannot circumvent the final decision rendered in the State Court Action by bringing a mirror-

image action here.  Plaintiff's claim is barred by res judicata, and must be dismissed.[8]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Plaintiff's Complaint is dismissed as barred by res judicata.

The Clerk of Court is directed to terminate Docket Entry 27, and mark the case closed.

SO ORDERED.

Dated:       August 8, 2014
             New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge

---

[8]     Because the Court dismisses Plaintiff's Complaint on res judicata grounds, it need not assess Defendants' remaining arguments that the Complaint is barred by the Brillhart abstention doctrine (Def. Br. 7), or that Defendants' voluntarily dismissal of the Gray-Ray Action precludes this Court from awarding attorneys' fees (*id.* at 9).  As it happened, however, Defendants have withdrawn their Brillhart abstention doctrine argument because of the termination of the State Court Action.  (Def. Reply 1).